IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **NORRIS FOSTER,** | ) | |
| | ) | |
| | ) | **CIVIL ACTION NO.:** |
| Plaintiff, | ) | **2:06-CV-00405-ID-SRW** |
| | ) | |
| v. | ) | |
| | ) | |
| **MID STATE LAND & TIMBER** | ) | |
| **COMPANY, INC., D/B/A** | ) | |
| **SEDGEFIELDS PLANTATION,** | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT MID STATE LAND & TIMBER COMPANY, INC.'S
REPLY BRIEF IN FURTHER SUPPORT OF MID STATE'S
MOTION FOR SUMMARY JUDGMENT AS TO
PLAINTIFF NORRIS FOSTER'S CLAIMS**

COMES NOW Defendant Mid State Land & Timber Company, Inc. (hereafter referred to as "Defendant" or "Mid State"), within the time allowed by this Court's Order, and submits this Reply brief in further support of Mid State's Motion for Summary Judgment as to Plaintiff Norris Foster's ("Plaintiff" or "Foster") Claims.[1]

---

[1] Rebuttal evidence is attached hereto. All other evidence cited herein is attached to Defendant's Memorandum of Law in Support of Mid State's Motion for Summary Judgment as to Plaintiff Norris Foster's Claims ("Def.'s Mem. of Law").

## I. INTRODUCTION[2]

In his Opposition, apparently not constrained by the evidentiary record, Plaintiff recasts the reasons for his termination, quarrels with Defendant's reasoning, and misstates the law of this Circuit. Despite Plaintiff's claims to the contrary, he is required to accept Defendant's proffered reasons, address them head on, and rebut each and every one. As a matter of law, Plaintiff cannot substitute his own criteria or selectively rebut Defendant's. The undisputed evidence establishes that Plaintiff is not similarly situated to any of the white employees to whom he compares himself. Further, the evidence establishes that were multiple legitimate grounds for Plaintiff's termination which Plaintiff has either conceded under oath or failed to rebut in his Opposition. Finally, Plaintiff's work assignments claim is not cognizable under the law of this Circuit and, even if it was, Plaintiff has failed to rebut the legitimate nondiscriminatory reasons for his work assignments in his Opposition. Accordingly, summary judgment is due to be granted as to all of Plaintiff's claims.

---

[2] Plaintiff's Opposition is a collection of incomplete citations, misstated testimony, and arguments that are not supported by the evidence. The claims of multiple plaintiffs (from two different cases) are lumped into a single document without any designation of which arguments apply to each plaintiff. This Court has previously warned that "in discharging its summary judgment burden, Plaintiffs' counsel must designate *on behalf of each plaintiff* the 'specific facts showing that there is a genuine issue of material fact for trial'" and "show how those facts support the claims of each individual litigant." *Dinkins v. Charoen Pokphand USA, Inc.*, 133 F. Supp. 2d 1254, 1261 (M.D. Ala. 2001) (DeMent, J.) (quoting FED. R. CIV. P. 56(e)) (emphasis in original). As this Court has aptly noted, and as is the case here, "[failure to do so indicates an absence of proof on the issue at hand." *Dinkins*, 133 F. Supp. 2d at 1261.

## II. ARGUMENT[3]

A.   The Alleged Statements of Joel Norman Do Not Support Plaintiff's Claims.

Plaintiff bases his discrimination claims, and apparently his belief that he is excused from the requirements of *McDonnell Douglas*, largely upon a collection of comments by Joel Norman ("Mr. Norman") and in particular Mr. Norman's alleged comment about having an "all white crew." (Opposition at 8.) Plaintiff asserts that

---

[3] As previously noted, Foster's Opposition is difficult to parse. Defendant's Motion for Summary Judgment and this Reply address the claims actually pled in Foster's Complaint: pay discrimination, wrongful termination, and a "terms and conditions" claim for his barn cleaning assignments. To the extent Plaintiff is arguing new theories in his Opposition–failure to hire (Opposition at 8), Tarver's non-selection for the night watchman position (Opposition at 10-11), retaliation (Opposition at 12), and the allegedly discriminatory denial of use of the air conditioned tractor (Opposition at 11)– Plaintiff's arguments are not relevant to his actual claims and are contrary to Rule 15 of the Federal Rules of Civil Procedure. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004); *see also, e.g.*, *Mahgoub v. Miami Dade Community Coll.*, No. 05-11520, 2006 WL 952278, *2 (11th Cir. Apr.13, 2006) (affirming summary judgment in defendant's favor as to Title VII retaliation claim, when a retaliation claim was raised in complaint but specific theory supporting retaliation claim at issue was not raised until response to summary judgment motion).

Even if these new claims were allowed, however, they would fail just like the others. To state the obvious, Plaintiff cannot assert a failure to hire claim when he was hired (twice) by Mid State. (Deposition of Norris Foster ("Foster Dep."), attached as Exhibit E to Def.'s Mem. of Law, at 51:20 through 52:9, 65:11 through 67:8.) Nor can Plaintiff assert a claim of discrimination on behalf of Tarver, especially when Tarver himself does not even allege that his non-selection for the night watchman position was discriminatory. (Deposition of Henry Tarver ("Tarver Dep."), attached hereto as Exhibit A, at 57:5 through 58:10.) Any retaliation claim for Plaintiff's termination in December 2005, based upon a complaint about pay made in July 2005, fails for lack of causal connection. *See, e.g.*, *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing affirmatively several court of appeals decisions for the proposition that a three to four month gap is insufficient to establish the causal relation prong in a retaliation case). Finally, even if Plaintiff was denied the opportunity to drive the air conditioned tractor (in November "after the whites were hired"), the denial of this opportunity does not rise to the level of an adverse employment action under the law of this Circuit. *Reis v. Universal City Development Partners, Ltd.*, 442 F. Supp. 2d 1238, 1253-54 (M.D. Fla. 2006) (finding denial of transfer to indoor position with heating and air conditioning was not an "adverse employment action" for purposes of retaliation claim).

Mr. Norman had discriminatory motives and claims that David Carroll ("Mr. Carroll") was the "cat's paw" for Mr. Norman. (Opposition at 12.) The undisputed evidence, however, establishes that Mr. Norman's comments are not relevant to Plaintiff's claims and the cat's paw theory does not apply.

In his deposition, Foster admits that he does not have any first hand knowledge of any specific conversation between Mr. Norman and Mr. Carroll concerning his treatment or termination. (Foster Dep., attached as Exhibit E to Def.'s Mem. of Law, at 131:1-5.) The undisputed evidence establishes that Mr. Carroll personally observed performance issues concerning Foster, investigated the reports made by Mr. Norman, and independently made the decision to terminate Foster's employment with Mid State.[4] (Defendant's Answers to Plaintiff's Interrogatories, attached as Exhibit L to Def.'s Mem. of Law, No. 1; Deposition of David Carroll ("Carroll Dep."), attached as Exhibit A to Def.'s Mem. of Law, at 45:4 through 47:23.) The "cat's paw" theory of analysis only applies if the plaintiff shows that a recommendation by someone with animus directly resulted in the employee experiencing an adverse

---

[4] In his Opposition, Plaintiff states "Norman got mad and fired Foster." (Opposition at 4.) Contrary to Plaintiff's allegation, the cited deposition testimony of Foster <u>does not state</u> that Mr. Norman recommended Foster's termination, made the decision to terminate his employment, or even told Foster that he was fired. At most, the cited testimony indicates that Mr. Norman was present when Mr. Carroll told Plaintiff he was fired and agreed with Mr. Carroll that Mid State could "get along without" Plaintiff. The evidence that Mr. Carroll was the sole decision maker has not been refuted.

action. *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1331-32 (11th Cir. 1999). "[T]he plaintiff [must] show that the decision maker followed the biased recommendation without independently investigating the complaint against the employee." *Stimpson*, 186 F.3d at 1332. Thus, the causal link is severed if "instead of merely tacitly approving or otherwise 'rubber stamping' another's adverse recommendation or allegations, the decision maker conducts an 'independent investigation' into the allegations against the plaintiff." *Iduoze v. McDonald's Corp.*, 268 F. Supp. 2d 1370, 1375 (N.D. Ga. 2003) (quoting *Curtis v. Teletech Customer Care Management, Inc.*, 208 F. Supp. 2d 1231, 1243-44 (N.D.Ala.2002)). In this case, the cat's paw theory is inapplicable because (1) there is no evidence that Mr. Norman made recommendations as to Plaintiff's pay or termination and (2) Mr. Carroll personally observed Plaintiff's performance issues and independently investigated all the reports that he received from Mr. Norman.[5] Thus, Plaintiff cannot show that Mr. Carroll acted as a cat's paw for a biased recommender.

Furthermore, because Mr. Norman did not make recommendations as to Plaintiff's pay or termination and Mr. Carroll acted on his own observations and

---

[5] Not only did Mr. Carroll observe Plaintiff's failure to correctly and completely perform his roller chopping duties, Mack, one of Foster's black coworkers and a current plaintiff in the *Harris* lawsuit, also testified that Foster (and Harris) repeatedly hit and nicked trees after being told repeatedly not to do so. (Deposition of Willie Mack ("Mack Dep."), attached as Exhibit K to Def.'s Mem. of Law, at 79:12-23; 85:13-20; 86:16 through 87:11.)

5

independent investigation, the statements of Mr. Norman are not relevant to Plaintiff's claims of discrimination. Mr. Norman is the only individual Plaintiff alleges made remarks evidencing discriminatory animus. Plaintiff testified that Mr. Carroll "wouldn't ever" discriminate against him on the basis of race and admitted that he has no knowledge of any conversations between Mr. Norman and Mr. Carroll regarding his treatment. (Foster Dep., attached as Exhibit E to Def.'s Mem. of Law, at 130:7 through 131:5.) Nor is there any evidence that Mr. Carroll either knew of Mr. Norman's alleged discriminatory animus or harbored discriminatory animus of his own.[6] As the Eleventh Circuit has explained, "[t]he biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case." *Holifield v. Reno*, 115 F.3d 1555, 1563-64 (11th Cir. 1997). *See also Yates v. Hall*, No. 3:05CV459, 2007 WL 1019924, *10 (N.D. Fla. Mar. 30, 2007) (citing *Holifield* and rejecting as irrelevant plaintiff's evidence of discriminatory statements of a supervisor who did not recommend plaintiff's termination or terminate the plaintiff's employment). Accordingly, the statements of Mr. Norman are neither a substitute for a prima facie case of discrimination nor

---

[6] Plaintiff claims that he complained to Mr. Carroll about discriminatory treatment by Mr. Norman. (Opposition at 4.) The deposition testimony cited by Plaintiff does not support these statements. Plaintiff actually testified that he never told Mr. Carroll what his problems with Mr. Norman were and that while he informed Lee of Mr. Norman's comments, he is not aware of Lee ever conveying to Mr. Carroll his complaints of discriminatory treatment. (Deposition of Norris Foster ("Foster Dep."), attached hereto as Exhibit B, at 93:3 through 96:3.)

6

evidence of pretext.

B.    Plaintiff's termination claim fails as a matter of law.[7]

Mid State has proffered numerous nondiscriminatory reasons for its termination decision. Specifically, Mr. Carroll made the decision to terminate Foster's employment because: (1) Foster displayed a negative attitude about his employment;[8] (2) Foster criticized his supervisor's hunting skills among his coworkers and in front of customers; (3) Foster failed to comply with Mid State's policy as to customer tips; (4) Foster failed to follow instructions; (5) Foster failed to timely complete his assigned duties; and (6) Foster failed to perform assigned tasks. (Carroll Dep., attached as Exhibit A to Def.'s Mem. of Law, at 45:4 through 47:21; Defendant's

---

[7] To establish a prima face case, Foster claims that he was replaced by Hamm, a white male. (Opposition at 6.) In support of this proposition, he cites the testimony of Mr. Norman. In fact, Mr. Norman testified that Hamm assumed Plaintiff's "scouting" duties on hunts led by Mr. Norman, which is consistent with Defendant's Interrogatory Answer that Hamm performed some of Plaintiff's duties. (Deposition of Joel Norman ("Norman Dep."), attached hereto as Exhibit C, at 183:23 through 184:23; Defendant's Answers to Plaintiff's Interrogatories, attached as Exhibit L to Def.'s Mem. of Law, No. 7.) Plaintiff has not refuted that part of his duties were assumed by a black employee. However, assuming arguendo that this testimony concerning Hamm's assumption of Plaintiff's scouting duties is sufficient to establish a prima facie case, Plaintiff's termination claim nonetheless fails as matter of law.

[8] Although Plaintiff alleges in a conclusory fashion that Mr. Carroll's perception of Foster's negative attitude was based on his complaint about his pay, there is no evidence to support this allegation. To the contrary, Mr. Carroll set out in his Memorandum, attached as Exhibit M to Def.'s Mem. of Law, the reasons for his belief that Plaintiff had a negative attitude about his job. As a matter of law, it is legitimate for an employer to base its termination decision upon an employee's perceived dissatisfaction with his job. *See Wolf v. Buss (America) Inc.*, 77 F.3d 914, 920-21 (7th Cir.) (approving employer's decision to choose to terminate employee it believed to be dissatisfied with his job based on his prior complaints), *cert. denied*, 519 U.S. 866, 117 S.Ct. 175, 136 L.Ed.2d 116 (1996).

Answers to Plaintiff's Interrogatories, attached as Exhibit L to Def.'s Mem. of Law, Nos. 1 and 3; January 3, 2006 Memorandum from David Carroll, attached as Exhibit M to Def.'s Mem. of Law.)

The law is clear that "in order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that *each* of the employer's proffered nondiscriminatory reasons is pretextual." *Chapman v. AI Transport*, 229 F.3d 1012, 1037 (11th Cir. 2000) (en banc) (emphasis added). In the face of reasons which would clearly motivate a reasonable employer, Plaintiff must meet each of Mid State's reasons "head on" with a rebuttal. *Id.* at 1030. He "cannot succeed by simply quarreling with the wisdom" of the proffered reasons. *Id.* (citing *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1341 (11th Cir. 2000)). Despite these clear propositions of law, Plaintiff selectively addresses two of the many reasons for his termination and argues that his denial of the misconduct underlying those two reasons is sufficient to demonstrate pretext. Plaintiff's arguments fail as a matter of law.

Although Defendant proffered six reasons for Plaintiff's termination, in his Opposition, Plaintiff addresses only two.[9] Specifically, Plaintiff denies that he

---

[9] Plaintiff also adds an additional reason (theft) and attempts to rebut that reason with a denial. Specifically, Plaintiff claims that "four people" testified that his firing was related to theft of birds: Plaintiff, Joel Norman, Roy Lee, and Jeffrey Harris. (Opposition at 12.) Actually, Mr. Norman's cited testimony about a termination for stealing concerned Plaintiff's first stint of

criticized Mr. Norman in front of guests and claims he did not violate Defendant's written tipping policy.[10] (Opposition at 11.) Contrary to Plaintiff's assertion, however, mere denials are not sufficient to demonstrate pretext.[11] For purposes of

---

employment – not the termination at issue in this case. (Norman Dep., attached hereto as Exhibit C, at 117:8-20.) Lee's testimony was that when he informed Mr. Carroll that Plaintiff was telling people that he was terminated "because of the birds," Mr. Carroll corrected him and said that Plaintiff was terminated "because of the birds," his poor attitude, and because "he just wouldn't do the jobs" that he was asked to do. (First Deposition of Roy Lee ("Lee Dep. I"), attached hereto as Exhibit D, at 102:8-23.) Plaintiff testified that, in addition to mentioning the missing birds, Mr. Carroll told him, at the time his employment was terminated, that he was being let go because he was not doing his job and his work was not satisfactory. (Foster Dep., attached hereto as Exhibit B, at 165:10 through 166:4.) Although Harris claims in his affidavit that, on the day Foster was fired, he was asked about whether Foster had stolen birds, Harris was not the decision maker or even present when Plaintiff's employment was terminated; thus, Harris does not have personal knowledge of the reasons for Plaintiff's termination. In other words, the testimony cited by Plaintiff only confirms that in addition to the many reasons proffered by Defendant to justify Plaintiff's termination, there could have been one more. The cited testimony does not refute the other legitimate reasons for Plaintiff's termination nor demonstrate pretext. *See Tidwell v. Carter Products*, 135 F.3d 1422, 1428 (11th Cir. 1998) (noting that "the existence of a possible additional non-discriminatory basis for Tidwell's termination does not, however, prove pretext.").

[10] Plaintiff's argument that his conduct did not violate the tipping policy is absurd. Plaintiff claims that he did not violate Defendant's tip policy, which prohibited "standing around" waiting for tips, when he instead took the more direct and obviously more improper route of approaching clients directly, telling them to put the tips in his hand, and advising them that his supervisor steals his tips. (Opposition at 11; Mem. of Law at 12, n. 15 (quoting Plaintiff's testimony that he told clients "if they had something to give me, give it to me in my hand, because if they didn't, I wasn't going to get it.").) Moreover, Mr. Norman testified that he disbursed tips to the crew when the tips were designated as "for the crew" (Norman Dep., attached hereto as Exhibit C, at 159:16 through 160:5) and Plaintiff testified that he is not aware of any instance when white crew members received tips and black crew members did not (Foster Dep., attached as Exhibit E to Def.'s Mem. of Law, at 135:11-16). Plaintiff's admission negates any inference of discrimination as to tip distribution.

[11] Plaintiff states that he worked at Mid State for ten years and had a stellar performance record before he began working under Mr. Norman's supervision in September 2005. (Opposition at 8 (stating he had never been disciplined or even criticized before Mr. Norman was hired in September 2005).) As this Court will note, the cited deposition testimony does not support this statement. Further, the evidence in the record contradicts this statement as Roy Lee, Plaintiff's supervisor during his first period of employment with Mid State, testified that Foster lied about repairing the plumbing in the barn and stole traps, dog feed, and birds when he was employed with

establishing pretext, the proper inquiry is not whether Defendant's reasons for terminating Plaintiff were correct, but rather, whether Defendant reasonably believed Plaintiff committed the infractions that led to his termination. *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171 (11th Cir. 2000) (affirming summary judgment when employer had a "good faith belief" that the plaintiff employee lied in an investigation which resulted in her termination, even when the employee denied lying); *Chaney v. So. Ry. Co.*, 847 F.2d 718, 723 (11th Cir. 1988) (holding that an employee could not establish pretext when the employer, in good faith, believed that the employee engaged in misconduct, regardless whether the employee in fact engaged in the misconduct). Accordingly, because Plaintiff's denials do not demonstrate that Mr. Carroll's beliefs were not honestly held, they are insufficient to demonstrate pretext.

Furthermore, even if Plaintiff's denials were sufficient to rebut the two reasons he challenges in his Opposition, he has failed to even address the multiple other grounds for his termination. While he claims he did not criticize Mr. Norman in front of guests, Plaintiff does not dispute that he criticized Mr. Norman's hunting techniques to his coworkers. (Opposition at 11.) He has not refuted Defendant's

---

Defendant between 1993 and 2001. (Declaration of Roy Lee, attached as Exhibit G to Def.'s Mem. of Law, at 1.) Further, while Plaintiff implies that Mr. Norman's written reprimand of him was unjustified and purely the result of Mr. Norman's discriminatory animus (Opposition at 4), Lee testified that he agreed with Mr. Norman's decision to writeup Plaintiff and Jeffrey Harris when they decided to go out horse riding when they were supposed to be clipping the horses. (Lee Dep. I, attached hereto as Exhibit D, at 99:9-23.)

conclusion that he was dissatisfied with his job. He has not disputed that he failed to perform his job assignments in a timely manner and failed to follow directions concerning the procedure for proper roller chopping without clipping trees.[12] (Carroll Dep., attached as Exhibit A to Def.'s Mem. of Law, at 45:4 through 47:21; Foster Dep., attached as Exhibit E to Def.'s Mem. of Law, at 116:22 through 117:16; 132:14 through 133:1; 155:21 through 157:2; 153:8 through 155:3; 157:17 through 158:10.) There is no evidence that Mid State has ever retained another employee who failed to perform assigned tasks, failed to follow directives about performance, ignored the warnings contained in the memorandum concerning tipping procedure, and displayed a negative attitude similar to Foster's. (Second Affidavit of David Carroll ("Carroll Aff. II"), attached as Exhibit C to Def.'s Mem. of Law, ¶ 5; Defendant's Answers to Plaintiff's Interrogatories, attached as Exhibit L to Def.'s Mem. of Law, No. 8.) Because Plaintiff has not demonstrated that each of Defendant's proffered reasons is pretext for discrimination, summary judgment is due to be granted as to his termination claim.

---

[12] Mack, one of Foster's black coworkers and a current plaintiff in the *Harris* lawsuit that is pending against Mid State, also testified that Foster (and Harris) repeatedly hit and nicked trees after being told repeatedly not to do so. (Mack Dep., attached as Exhibit K to Def.'s Mem. of Law, at 79:12-23; 85:13-20; 86:16 through 87:11.)

C.	Plaintiff's Wage Claim Fails as a Matter of Law.[13]

Beckwith, Hubbard, May, and Hamm, were all hired five to eleven months after Foster and were paid $8.00 per hour because they all possessed skills that enabled them to meet Mid State's immediate needs at the time they were hired to work at Sedgefields. (Carroll Dep., attached as Exhibit A to Def.'s Mem. of Law, at 137:15-19; 141:18 through 142:6; Mem. of Law at 4-5, 7 (dates of hire).) In his Opposition, Plaintiff quarrels with this wisdom and claims that Mid State should have instead compensated employees based on their age, military experience, and prior hunting

---

[13] In support of his wage claim, Plaintiff makes several misstatements. For instance, Plaintiff claims that "every white hired made more money," and "blacks were on the bottom tier" of a two tiered compensation scheme. (Opposition at 12.) As an initial matter, the evidence in the record is for a limited three year time period (2003-2006) so Plaintiff's arguments about "every white" exaggerate the evidence. Nevertheless, these sweeping statements are contradicted by Plaintiff's purported evidence. Plaintiff's own Exhibits (34 and 35) reflect two black females being paid $8.00/hour and $9.00/hour (as much and more than white employees), Mack (who is black) being paid $8.00/hour beginning in January 2006, and further show that Lee earned a significantly higher wage than nearly every other white employee.

Additionally, Plaintiff claims that there is evidence that "Mid State hired by word of mouth, to keep from hiring blacks." (Opposition at 12.) Consistent with Plaintiff's practice of misstating the evidence, the cited deposition testimony does not support this statement. Furthermore, while Plaintiff claims, without any supporting evidence, that "word of mouth" hiring was instituted as a way to hire only white employees, Plaintiff and all of his black co-workers were hired as a result of the same practice. (Foster Dep., attached as Exhibit E to Def.'s Mem. of Law, at 64:1-6; 69:3-18 (noting he was asked by Lee to return to Mid State); Deposition of Jeffrey Harris ("Harris Dep."), attached hereto as Exhibit E, at 47:6 through 48:1 (indicating he applied for a position with Mid State based on Foster's recommendation); Deposition of Willie Mack, ("Mack Dep."), attached hereto as Exhibit F, at 39:2-13 (indicating that Lee approached him about an opening at Sedgefields); Tarver Dep., attached hereto as Exhibit A, at 36:22 through 37:2; 38:14-23 (noting that Lee approached him about applying for a position at Sedgefields); Deposition of Demetrius Parham ("Parham Dep."), attached hereto as Exhibit G, at 25:12-22)(noting that Lee told him to submit an application at Sedgefields).)

12

camp employment. Under the law of this Circuit, "a plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason," as long as "the reason is one that might motivate a reasonable employer." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001); *see also Rowell v. BellSouth Corp.*, 433 F.3d 794, 798-99 (11th Cir. 2005) (explaining that "[i]t is by now axiomatic that we cannot second-guess the business decisions of an employer"). Certainly it is reasonable to compensate an employee based on his ability to meet the employer's immediate needs. Plaintiff's arguments to the contrary are insufficient to sustain his claim.[14]

In addition to advocating different criteria, in his Opposition, Plaintiff alleges that he is similarly situated to Hubbard because he "had previously operated a skidder." (Opposition at 11.) By claiming he is similarly situated to Hubbard, Plaintiff overstates his qualifications and the evidence. Plaintiff's testimony concerning his skidder experience is that, between 1993 and 2001 (during his first

---

[14] While Plaintiff claims he was not adequately compensated for his hunting camp experience, he concedes Mid State would have paid him $8.00/hour, as he initially demanded, but Mid State set his pay at $7.00/hour when he later submitted an application listing $7.00/hour as his "expected pay rate." (Opposition at 2-3.) Further, he entirely fails to address the fact that Mr. Carroll offered to pay him $8.00/hour, which was as much as the white employees to whom Plaintiff compares himself, if Plaintiff would get a valid driver's license. (Carroll Dep., attached as Exhibit A to Def.'s Mem. of Law, at 147:2-12.) According to Foster, he took the money Mr. Carroll gave him to get a license, but never bothered to get a license because he was just "too lazy." (Foster Dep., attached as Exhibit E to Def.'s Mem. of Law, at 144:3-22.)

13

stint of employment), Defendant would rent a skidder "every now and then." (Foster Dep., attached hereto as Exhibit B, at 54:5 through 55:17.) Plaintiff concedes that this "old guy" operated it "most of the time," but claims that he operated the skidder "sometimes." (*Id.*) Plaintiff does not argue, nor can he, that there is any evidence that he was a *proficient* skidder operator. In contrast, Hubbard had worked with skidders regularly with a prior construction job and was a proficient skidder operator. (Carroll Dep., attached as Exhibit A to Def.'s Mem. of Law, at 138:18 through 139:18.) These differences in the amount of experience and operating ability preclude Plaintiff from claiming he is similarly situated to Hubbard. *Mack v. ST Mobile Aerospace Engineering, Inc.*, No. 05-14695, 2006 WL 2129661 (11th Cir. July 31, 2006) (affirming summary judgment for employer because employee's comparators possessed specialized training and experience that employee did not, and thus employee was not similarly situated to his alleged comparators). Moreover, there is no evidence that Plaintiff ever relayed to Mr. Carroll, the decision maker with regard to compensation after April 2005, that he had this limited experience with skidder operation.[15]

---

[15] Defendant did not purchase a skidder until shortly before Hubbard was hired in November 2005. (Carroll Dep., attached as Exhibit A to Def.'s Mem. of Law, at 138:18 through 139:18.) After Defendant purchased the skidder, there is no evidence that Foster ever informed Mr. Carroll that he could operate the skidder or that Foster ever volunteered to do so.

Plaintiff admits that Beckwith had "extra duties as a night watchman," but claims it was discriminatory for Defendant to pay Beckwith $8.00/hour to assume these duties since he would be entitled to overtime. It is reasonable and legitimate to pay a higher hourly wage to an employee who has agreed to assume extra duties.[16] *Kimble v. Georgia Pacific Co.*, 245 F. Supp. 2d 862, 878 (M.D. La. 2002) (noting extra duties, which plaintiff failed to rebut, were legitimate reason for pay disparity). Plaintiff's counsel's contention that it would have been a better business decision to simply insist that Beckwith be satisfied with any overtime compensation to which he was entitled under the FLSA does not demonstrate that Defendant's reason is false or that Mr. Carroll did not honestly believe additional compensation was appropriate in these circumstances.[17] *See Nix v. WLCY Radio/Rahall Comms.*, 738 F.2d 1181, 1187 (11th Cir. 1984) (explaining employer's proffered reason "does not have to be a reason that the judge or jurors would act on or approve.") (citations omitted).

Finally, Plaintiff claims that Corey Balkcam's compensation is evidence that Mr. Carroll's reasons for the compensation of white employees hired six months later

---

[16] Beckwith has a social friendship with Mr. Carroll and Mr. Carroll's father. (Mack Dep., attached as Exhibit K to Def.'s Mem. of Law, at 116:17-23.) Discrimination based on personal relationships is not actionable. *See Phillips v. Hibbett Sporting Goods, Inc.*, 329 F. Supp. 2d 1280, 1291 n. 8 (M.D. Ala. 2004).

[17] Nor is Tarver's non-selection for the night watchman position relevant to the pretext analysis for Foster's compensation claim. Although Tarver is also a plaintiff in a suit against Defendant, he has not asserted any claim of discrimination based on his non-selection for the night watchman position. (Tarver Dep., attached hereto as Exhibit A, at 57:5 through 58:10.)

15

are pretextual. It is not. Mr. Carroll testified that he based his hiring and compensation decisions upon Mid State's immediate needs at the time and the individual's ability to meet those needs. (Carroll Dep., attached as Exhibit A to Def.'s Mem. of Law, at 137:15-19; Second Carroll Aff., attached as Exhibit C to Def.'s Mem. of Law, ¶ 3.) The undisputed evidence is that when Mr. Carroll was hired in April 2005, he began surveying and assessing the needs of over twenty square miles of property. (Second Carroll Aff. ¶ 3.) Balkcam was hired just weeks after Mr. Carroll was hired in response to Lee's request for additional labor to help with the pressing mowing and weed-eating needs for that time of year. (*Id.*) Because he was hired for the sole purpose of ground maintenance, Balkcam was paid $7.00/hour like all the other employees performing exclusively property maintenance. (Second Carroll Aff. ¶ 3; Plaintiff's Exhibit 35.)

Although Balkcam was indisputably hired at Lee's request to meet the immediate need for additional labor for property maintenance, Plaintiff attempts to compare Hamm to Balkcam based on the fact both had welding skills. This comparison is not proper. Hamm was hired eight months after Balkcam in January 2006. (Carroll Aff. II, attached as Exhibit C to Def.'s Mem. of Law, ¶ 3.)When Hamm was hired, in November 2005, Mr. Carroll was seven months into his job, farther along in his assessment of Mid States's needs, and aware of the equipment that

needed to be repaired and built by an individual with welding experience. (Carroll Dep., attached as Exhibit A to Def.'s Mem. of Law, at 139:22 through 141:9.) Because those were Mid State's needs at the time, Mr. Carroll hired Hamm to perform the welding associated with the needed repairs and building projects and paid him $8.00/hour for his skills. (*Id.*)

D.  Plaintiff's Job Assignments Claim Fails as a Matter of Law.

Without citation to the record, Plaintiff claims that "blacks were assigned the most onerous tasks, which is also evidence of discrimination." (Opposition at 11.) As noted in Defendant's Memorandum of Law, Plaintiff has denied that white employees were impermissibly excused from the allegedly "more onerous" cleaning assignments. (Def.'s Mem. of Law at 26, n. 28; Foster Dep., attached as Exhibit E to Def.'s Mem. of Law, at 126:22 through 127:2.) Moreover, Plaintiff alleges, without citation to the record, that his assignments were "more onerous," but has failed to specify how those jobs impacted his compensation, benefits or status as an employee. In other words, Plaintiff has failed to refute Defendant's argument that his work assignments did not impact the terms and conditions of his employment in a "real and demonstrable way." (Def.'s Mem. of Law at 26.) Furthermore, even if Plaintiff had testified that white employees were impermissibly excused from cleaning tasks (and he did not) and had shown that the cleaning assignments impacted the terms and

conditions of his employment (and they did not), Plaintiff nonetheless failed to respond to the legitimate nondiscriminatory reasons proffered by Defendant – namely, Plaintiff's cleaning duties, which he was admittedly already performing when the white employees were hired, increased as a result of hunting season beginning in late September. (Def.'s Mem. of Law at 9, 26-27.) Accordingly, because there is no evidence of "disparate treatment," an actionable adverse employment action, or pretext, summary judgment is due to be granted as to Plaintiff's work assignments claim.

### III.  CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendant Mid State Land & Timber Company, Inc. respectfully requests this Court enter summary judgment in favor of Mid State and against Plaintiff Norris Foster as to all claims asserted in Foster's Complaint.

Respectfully submitted,

/s/Carter H. Dukes
Carter H. Dukes
Kimberly W. Geisler
Attorneys for Defendant
Mid State Land & Timber Company, Inc.

**OF COUNSEL:**
HUCKABY SCOTT & DUKES, P.C.
2100 Third Avenue North
Suite 700
Birmingham, Alabama 35203
(205) 251-2300

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon counsel by electronic notification through the Court's e-filing system or via U.S. mail as follows:

>Jerry D. Roberson, Esq.
>Roberson & Roberson
>8 Office Park Circle
>Suite 150
>Birmingham, Alabama 35223
>
>Albert H. Adams, Jr., Esq.
>Irby Law Firm, LLC
>Post Office Box 910
>Eufaula, Alabama 36072

DONE this the 1st day of May, 2007.

>/s/Carter H. Dukes
>Of Counsel

40733.1